## Poggensee v. The Mutual Fire, Lightning & Tornado Insurance Co.

1. **Insurance Against Tornado:** EVIDENCE AS TO NATURE OF STORM. Action on a policy insuring against damage by tornadoes. *Held* that for the purpose of determining whether the storm which caused plaintiff's loss was in fact a tornado, it was competent to prove the effects of the storm upon other property in the neighborhood.    See opinion for application of the rule.

*Appeal from Crawford Circuit Court.*

THURSDAY, JUNE 17.

ACTION upon a policy of insurance.    There was a trial to a jury, and verdict and judgment were rendered for the plaintiff.    The defendant appeals.

*Shaw & Kuehule*, for appellant.

*E. K. Burch*, for appellee.

ADAMS, CH. J.—The policy sued on is in the German language. The plaintiff averred in his petition that, by the policy, he was insured against loss by tornado; that the policy covered a certain stallion, and that the stallion was killed by a tornado. The horse, on the night of his death, had been tied in a stable on the plaintiff's premises. While he was so tied there occurred an extraordinary rain storm, accompanied by some wind, and the stable was swept away, and the horse was found dead about eighteen rods from where the stable had stood. Upon the trial evidence was introduced tending to show that the wind which accompanied the rain was less than a tornado. Thereupon the plaintiff filed an amendment to his petition, averring, in substance, that the policy, properly translated, provided for insurance against wind storms. The evidence, however, showed that the policy, properly translated, did not provide for insurance against all kinds of wind storms, but only against winds of extreme violence; and the court instructed the jury that, to justify a verdict for the plaintiff, it would be necessary for them to find that the loss was caused by a tornado, hurricane, or irresistible wind storm.

I. The plaintiff testified as a witness in his own behalf. After having testified that his stable was blown down by wind, he was asked, on cross-examination, a question in these words: "What other buildings in your immediate neighborhood were destroyed by wind at that time?" The plaintiff objected to the question as immaterial, incompetent, and not in cross-examination, and the court sustained the objection. In our opinion, the question should have been allowed. If the witness had answered that no other buildings in the immediate neighborhood were blown down, the answer would, we think, have had some tendency to show that he was mistaken, or had testified falsely, in regard to the stable. This seems to us to be especially so, in view of the evidence in respect to the extraordinary character of the water-fall.

II. One Saggau was called as a witness by the plaintiff. He testified that he lived about twenty-five rods from the plaintiff; that a small house of his, about six or seven rods from the plaintiff's, was moved a little, though he did not know whether it was done by the water or wind; that he saw the *debris* of the plaintiff's stable, and that some limbs of trees were broken off about as large as his thumb; also that boards covering a brick-yard were blown away, and some timbers broken. He was then asked a question in these words: "Do you know of any other damage in that immediate neighborhood done by the wind that night?" To this question the plaintiff objected as immaterial, and not in cross-examination, and the court sustained the objection. This witness was in the midst of the scene of the alleged tornado. The damage which he testified to having seen did not necessarily show that the wind amounted to a tornado, and the jury would not have been justified in inferring that he saw more than he testified to. We cannot say, therefore, that the exclusion of the question was reversible error. Still, we think, in view of the importance of the witness, that it would have been better to allow the defendant to show distinctly the limit of the damage, as observed by this witness.

III. The defendant called as a witness one Schocker. He testified that he lived 120 rods north of the plaintiff's, and that he had stables and straw-stacks where he lived. He was then asked by defendant a question in these words: "What, if any, damage was done, or evidence of wind was there, around the stables and straw-stacks?" The question was objected to as immaterial and incompetent, and the court sustained the objection. It had already been proven that the wind was blowing from the north or north-west. If the fact was that there was no evidence of wind around Schocker's stables and straw-stacks, 120 rods north of the plaintiff's, such fact, we think, would have tended, at least in a slight degree, to show that at the plaintiff's the wind did not amount to a tornado, and that the destruction of his stable

was due, either to its own frailty, or the action of the water. We think that the question should have been allowed.

IV.    One McHenry was called by the defendant as a witness, who testified to seeing a grove near plaintiff's house after the alleged tornado.    He was asked a question in these words:  "Did you notice any trees having been blown down?" This question, upon objection by the plaintiff, was excluded. We think it should have been allowed.    Where a wind has not left behind it the ordinary indications of· a tornado, there is some ground for supposing that it did not amount to a tornado.    It is true that the path of a tornado is sometimes very narrow and sharply defined.    The fact, then, that trees in a grove near the plaintiff's stable were not blown down would not have shown necessarily that there was not a tornado at the plaintiff's stable; but we think that it was a fact which the defendant was entitled to show as having, at least, some slight bearing· in the case.

V.    One Hendrickson testified that he lived a mile west of the plaintiff.    He was then asked by defendant a question in these words:   "Do you know of there being a severe wind or water-spout over north-east of you that night?"    He answered as follows:   "Rain!   I never saw the likes of it,—so heavy."   This answer, upon the plaintiff's motion, was stricken out.   As there was some evidence tending to show that the plaintiff's stable might have been destroyed by water, we think that Hendrickson's testimony in regard to the character of the rain should not have been excluded.

REVERSED.